UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAY BRADSHAW,

                    Plaintiff,

          v.

PAUL PICCOLO, *et al.*,

                    Defendants.

---

**DECISION AND ORDER**

6:20-CV-06106 EAW

# <u>INTRODUCTION</u>

*Pro se* plaintiff Jay Bradshaw[1] ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 asserting claims that arose while he was incarcerated at Southport Correctional Facility ("Southport"). (Dkt. 20.) Presently before the Court is a motion for summary judgment filed by defendants Clifton Adriance ("Defendant Adriance"), Christopher Clark ("Defendant Clark"), Adam Dolaway ("Defendant Dolaway"), Farmer ("Defendant Farmer"), Paul Furney ("Defendant Furney"), Paul Piccolo ("Defendant Piccolo"), and James Taylor ("Defendant Taylor") (collectively "Defendants") (Dkt. 135) and a motion to strike Plaintiff's unauthorized sur-reply (Dkt. 142).

For the following reasons, Defendants' motion for summary judgment is granted, and the motion to strike is denied.

---

[1]    Plaintiff has commenced many other lawsuits in this Court. *See Bradshaw v. Annucci, et al.*, 6:21-cv-06604 EAW (W.D.N.Y. Sept. 27, 2021); *Bradshaw v. Piccolo, et al.*, 6:21-cv-06050 EAW (W.D.N.Y. Jan. 19, 2021); *Bradshaw v. Annucci, et al.*, 6:20-cv-06548 EAW (W.D.N.Y. July 28, 2020); *Bradshaw v. Piccolo et al.*, 6:20-cv-06368 EAW (W.D.N.Y. July 21, 2020); *Bradshaw v. Annucci, et al.*, 6:20-cv-06083 EAW (W.D.N.Y. Feb. 6, 2020).

# BACKGROUND

## I.    Factual Background

The following facts are taken from Defendants' Local Rule 56 Statement of Facts (Dkt. 135-1), Plaintiff's response thereto (Dkt. 139-2), Plaintiff's second amended complaint (Dkt. 20),[2] and the declarations submitted by the parties (Dkt. 135-3; Dkt. 135-4; Dkt. 135-5; Dkt. 135-6; Dkt. 135-7; Dkt. 135-8; Dkt. 135-9; Dkt. 135-10; Dkt. 135-11; Dkt. 139-1; Dkt. 140-1).  The Court has noted relevant factual disputes.

Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") who was previously housed at Southport.  (Dkt. 135-1 at ¶ 1; Dkt. 139-2 at ¶ 1; *see* Dkt. 20 at ¶¶ 2-5).  From November 4, 2013, to May 23, 2022, Plaintiff filed 110 grievances, the relevant ones the Court has summarized below.  (Dkt. 135-11 at 345-49; Dkt. 135-9 at 6-10).

---

[2]    Because Plaintiff's second amended complaint is verified (*see* Dkt. 20 at 6), the Court may rely on it for factual details.  "A plaintiff's verified complaint is to be treated as an affidavit."  *Zielinksi v. Annucci*, No. 9:17-CV-1087 (GTS/CFH), 2020 WL 7074845, at *7 (N.D.N.Y. Nov. 12, 2020) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist. . . .")); *see also Brandon v. Kinter*, 938 F.3d 21, 27 n.5 (2d Cir. 2019) ("Brandon's Amended Complaint was sworn under penalty of perjury.  Therefore, his allegations in the complaint can be considered as evidence for summary judgment purposes.").

A.    **The Grievances**

Each of the grievances described below was appealed to the Central Office Review Committee ("CORC") except for a letter addressed to the IGRC Office.  (Dkt. 135-9 at 2, 6; Dkt. 135-11 at 345).

On or about October 25, 2019, Plaintiff filed a grievance regarding excessive force.  (Dkt. 135-11 at 353).  Plaintiff alleged that three correction officers not named as defendants herein pushed Plaintiff into his cell, threatened him, and placed him in a choke hold.  (*Id.*).  On or about November 11, 2019, Plaintiff alleged excessive force against two other non-defendant correction officers.  (*Id.* at 372).

On or about November 29, 2019, Plaintiff filed a grievance concerning Defendant Taylor threatening him and stating he will have Plaintiff "scream like a b\*\*ch."  (*Id.* at 389).  On or about December 8, 2019, Plaintiff again alleged that Defendant Taylor threatened him, by stating that he is "going to continue this game" and taking Plaintiff's law library slip.  (*Id.* at 390).  Plaintiff alleged that Defendant Taylor was retaliating against him for reporting previous assaults.  (*Id.* at 389-90).

On or about December 16, 2019, Plaintiff filed a grievance that a non-defendant correction officer pushed him in the back while he was standing in his cell and waiting for medical.  (*Id.* at 437).  The officer then stated he will "tell medical you want to see them." (*Id.*).  Plaintiff also alleged in this grievance that he "was recently assaulted on December 5, 2019 by the heavy-set yard officer who took me out of the cell for a cell search, and on December 9, 2019 by the escort officer who escorted me to the Third Floor level three." (*Id.*).

There is also evidence in the record of a letter addressed to the IGRC Office dated February 6, 2020, wherein Plaintiff alleges retaliation, threats and harassment, and excessive force. (Dkt. 45 at 114-15). This letter tracks the allegations Plaintiff makes in his complaint based on events from January 18, 2020 (described below), but the names in the letter to the IGRC Office are redacted. (*See id.*).

## B.    Plaintiff's Allegations and Testimony

On October 21, 2019, Plaintiff claims that he was assaulted by "yard escort officers who removed him from [his] cell to conduct a search." (Dkt. 20 at ¶ 6). Then, on November 5, 2019, Plaintiff claims he was assaulted by another officer. (*Id.* at ¶ 7). On November 28, 2019, Plaintiff claims that Defendant Taylor threatened him and urged Plaintiff to enter the yard because Defendant Taylor believed other yard officers would attack Plaintiff. (*Id.* at ¶ 8).

Plaintiff claims that on December 5, 2019, Defendant Clark, who was the yard escort officer along with Defendant Furney, assaulted Plaintiff when Plaintiff was removed for a cell search. (*Id.* at ¶ 9). Plaintiff stated in his deposition that Defendant Clark was the "heavyset yard officer" Plaintiff referred to in his grievance dated December 16, 2019. (*See* Dkt. 135-11 at 44-46). Plaintiff alleges that on December 8, 2019, Defendant Taylor "threatened" Plaintiff by bringing up his November 28, 2019 grievance and stating that he was "going to continue this game." (Dkt. 20 at ¶ 10). Plaintiff concedes that Defendant Taylor never used force against him. (*See* Dkt. 135-11 at 65).

Plaintiff alleges that he filed grievances related to each of these assaults and threats, but Defendant Piccolo denied or ignored the grievances. (Dkt. 20 at ¶¶ 6-9).

Plaintiff alleges that on January 18, 2020, Defendant Clark and Defendant Furney "mockingly" told Plaintiff he was "up for a search." (*Id.* at ¶ 13). Plaintiff was tightly handcuffed behind his back. (*Id.* at ¶ 14). Defendant Clark said to Plaintiff "Oh, you wrote a grievance that I assaulted you." (*Id.*). Defendant Clark then "pounced" on Plaintiff's head and pushed him onto his bed. (*Id.* at ¶ 15). According to Plaintiff, Defendant Clark and Defendant Furney "repeatedly pounded on Plaintiff's back for two to three minutes." (*Id.*).

Plaintiff was then escorted to the shower, placed in leg shackles, and hit in the head by Defendant Adriance. (*Id.* at ¶ 16). Defendant Adriance raised Plaintiff's arms in the air, twisting and pulling, resulting in extreme pain for Plaintiff for 30 minutes. (*Id.*). As a result of these assaults, Plaintiff suffered "an abrasion to his ear, severe back pain . . . , numbness, abrasions and cuts on his wrists, and a broken pinky finger." (*Id.* at ¶ 18).

Following these assaults, Defendant Piccolo deprived Plaintiff of outdoor recreation until March 9, 2020, and Plaintiff was denied visits on January 18 and 19, 2020. (*Id.* at ¶ 19).

On January 22, 2020, Defendant Dolaway told Plaintiff he will feel "worse pain." (*Id.* at ¶ 20). Plaintiff acknowledged that Defendant Dolaway never used force against him. (Dkt. 135-11 at 59-60). Plaintiff also alleged that Defendant Farmer vowed to break Plaintiff's legs on January 30, 2020 (Dkt. 20 at ¶ 21), but Plaintiff acknowledged that Defendant Farmer never used force against him. (Dkt. 135-11 at 68-69).

## II.    <u>Procedural Background</u>

Plaintiff originally filed his complaint in the United States District Court for the Northern District of New York.  (Dkt. 1).  By Decision and Order filed February 18, 2020, the case was transferred to this District.  (Dkt. 6).

Following the transfer, this Court granted Plaintiff's motion for leave to proceed *in forma pauperis*.  (Dkt. 19).  Plaintiff then filed a second amended complaint on November 29, 2021.  (Dkt. 20).  The Court screened Plaintiff's second amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and held that the following claims were sufficient to survive initial review and proceed to service:

- Retaliation claims against Defendants Taylor, Clark, Furney, Farmer, and Adriance;

- Excessive force claims against Defendants Clark, Furney, and Adriance;

- Threats and harassment claims against Defendants Taylor, Clark, Farmer, and Dolaway;

- A failure to protect claim based on the alleged assaults against Defendant Piccolo; and

- A deliberate indifference claim to Plaintiff's serious medical needs related only to Plaintiff's alleged numbness and back pain against Defendant Piccolo.

(Dkt. 21 at 8-9).

On May 20, 2024, Defendants filed the pending motion for summary judgment. (Dkt. 135).  Plaintiff filed his response papers on June 26, 2024.  (Dkt. 139).  Defendants replied on July 9, 2024 (Dkt. 140) and Plaintiff filed a sur-reply shortly thereafter (Dkt. 141).

In response, Defendants filed a motion to strike Plaintiff's sur-reply on July 29, 2024. (Dkt. 142). Plaintiff responded on August 19, 2024. (Dkt. 143).

## DISCUSSION

## I.   Motion to Strike

"Because a decision on the motion to strike may affect [a party's] ability to prevail on summary judgment, it is appropriate to consider a motion to strike prior to a motion for summary judgment." *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S de R L de C.V.*, 627 F. Supp. 3d 408, 415 (S.D.N.Y. 2022) (quoting *Pugliese v. Verizon N.Y., Inc.*, No. 05-CV-4005 (KMK), 2008 WL 2882092, at *5 (S.D.N.Y. July 9, 2008)). Accordingly, the Court will consider Defendants' motion to strike before turning to the motion for summary judgment.

Defendants seek to strike Plaintiff's filing at Docket 141 as an unauthorized sur-reply. (Dkt. 142). Plaintiff requests the Court consider his sur-reply as "it clearly set[s] out how the grievance process was unavailable." (Dkt. 143 at 1).

"The general principle is that supplemental filings require leave of the court." *Neary v. Weichert*, 489 F. Supp. 3d 55, 62 (E.D.N.Y. 2020). But "[d]istrict courts have discretion to decide whether to strike or permit a litigant's sur-reply." *Id.*

This District's Local Rules of Civil Procedure state that "[a]bsent permission of the Judge hearing the motion, sur-reply papers are not permitted." Loc. R. Civ. P. 7(a)(6). Ultimately "whether to permit the filing of a sur-reply is entirely within the Court's discretion." *Marseet v. Rochester Inst. of Tech.*, No. 20-CV-7096FPG, 2022 WL 2718509, at *1 (W.D.N.Y. July 13, 2022); *see also Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73

(2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Plaintiff has not complied with Local Rule of Civil Procedure 7(a)(6). He did not obtain the Court's permission prior to filing his sur-reply, nor did he offer a reason for his failure to include the information contained in the sur-reply in his initial opposition papers. Nonetheless, given Plaintiff's *pro se* status, the Court exercises its discretion and declines to strike the sur-reply from the docket. *See, e.g.*, *Dean v. Robinson*, 656 F. Supp. 3d 400, 406 (W.D.N.Y. 2023). Instead, the Court has considered the sur-reply.

## II.    <u>Motion for Summary Judgment</u>

### A.    <u>Legal Standard</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, it finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary

materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B.     <u>Section 1983 Claims</u>

"To succeed on a section 1983 claim, Plaintiff must prove two essential elements: (1) defendants . . . acted under color of state law; and (2) as a result of their actions, Plaintiff suffered a denial of his federal statutory or constitutional rights or privileges." *Sampson v. City of Schenectady*, 160 F. Supp. 2d 336, 342 (N.D.N.Y. 2001); *see Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must show the "personal involvement of defendants in alleged constitutional deprivations." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). The theory of respondeat superior is not available in a § 1983 action. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004). "Instead, a plaintiff must . . . prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

### C.    Exhaustion of Administrative Remedies

Defendants argue that they are entitled to summary judgment on Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies. (Dkt. 135-12 at 3-11). In response, Plaintiff argues that he attempted to exhaust his administrative remedies, but that his grievances were not filed. (Dkt. 139-3 at 3).

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011). However, "[f]ailure to exhaust

administrative remedies is an affirmative defense . . . and when raised as a basis for summary judgment, the defendant 'bears the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute.'" *Deleon v. Ayers*, No. 16-CV-6848L, 2023 WL 171889, at *2 (W.D.N.Y. Jan. 12, 2023) (internal citation omitted) (quoting *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)).

To satisfy the PLRA's exhaustion requirement, a plaintiff must demonstrate the "proper exhaustion of administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones v. Bock*, 549 U.S. 199, 218 (2007). As such, "[t]he exhaustion inquiry . . . requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).

In New York, proper exhaustion generally[3] entails going through a three-step appeal procedure set out in 7 N.Y.C.C.R. § 701.5. *Garraway v. Smith*, No. 12-CV-924S, 2020 WL 491328, at *4 (W.D.N.Y. Jan. 30, 2020). This section provides:

> (1) the inmate must submit a written complaint to the Grievance Clerk within 21 calendar days of the alleged occurrence; the Grievance Clerk then submits the complaint to the Inmate Grievance Resolution Committee ("IGRC") for investigation and review; (2) if the IGRC denies the grievance, the inmate may appeal to the superintendent of the facility by filing an appeal with the

---

[3]    "DOCCS regulations except from the standard grievance procedure complaints of 'harassment'" which allow for an expedited procedure but still ultimately involve an appeal to CORC. *Solano v. Aubin*, 2023 WL 5200397, at *5 (N.D.N.Y. Aug. 14, 2023). (*See* Dkt. 135-9 at ¶ 7).

> [Grievance Clerk]; (3) after the superintendent issues a decision, the inmate
> may appeal to [CORC], which makes the final administrative determination.

*Id.* An inmate may only seek relief under § 1983 "[i]f all three levels of review are exhausted." *Id.*

"[I]nmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004). The grievance "should contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint." N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(2). "This requirement, the Second Circuit has held, is analogous to the requirements of notice pleading." *Solano v. Aubin*, No. 9:20-CV-1378 (BKS/ML), 2023 WL 5200397, at *5 (N.D.N.Y. Aug. 14, 2023) (citing *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)). But this does not mean that the grievant has to "lay out the facts, articulate legal theories, or demand particular relief[;] [a]ll the grievance need do is object intelligibly to some asserted shortcoming." *Id.* (quoting *Johnson*, 380 F.3d at 697). Moreover, "a grievance need not identify parties by name, and a grievant may substantively exhaust administrative remedies even without explicitly naming each claim later brought in court when the claim is closely related to allegations contained in the grievance." *Id.*

In support of their argument that Plaintiff failed to exhaust his administrative remedies, Defendants focus on Plaintiff's failure to exhaust before the CORC—the third step of the grievance process. Defendants attach Plaintiff's grievances that have been appealed to CORC. (*See* Dkt. 135-9 at 6-85; Dkt. 135-11 at 345-438). The grievances are

accompanied by sworn certifications establishing that the records were kept in the regular course of business. (Dkt. 135-9 at 6; Dkt. 135-11 at 345, 426).

### 1.    The Grievance Process was Available

Plaintiff argues the grievance process was "unavailable inasmuch as it does not direct how to appeal an unfiled grievance, and prison administrator[s] thwart my efforts to pursue the grievances and appeals through machination and misrepresentation." (Dkt. 139-3 at 3). Plaintiff states that "[b]ecause the grievances were not filed, [P]laintiff submitted letters to Defendant Piccolo, Director Mallozzi and the Former Acting Commissioner regarding Southport Grievance Supervisor's refusal to file the grievance." (*Id.*). Additionally, Plaintiff suggests he commenced an Article 78 proceeding "to compel the Southport grievance supervisors to accept and file my grievance[s] dated February 6 and February 24, 2020." (*Id.* at 2). For the reasons explained below, the Court concludes that there is no disputed issue of material fact with respect to whether the grievance process was available to Plaintiff—it plainly was available and, indeed, Plaintiff made repeated use of it.

An exception from the exhaustion requirement exists only if the grievance process is unavailable to a prisoner because

> (1) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[;] (2) it is so opaque that it becomes, practically speaking, incapable of use, meaning that some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it; or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Smith v. Papoosha*, No. 3:19CV206 (MPS), 2022 WL 35802, at *6 (D. Conn. Jan. 4, 2022) (internal quotations omitted) (citing *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)); *see also Williams v. Correction Officer Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016).

Plaintiff's contention that the grievance process was unavailable because the grievance process does not direct how to appeal a grievance—in other words, that the grievance process is so opaque it is incapable of use—is not supported by the record. The undisputed facts establish that Plaintiff appealed numerous grievances to CORC—demonstrating that he was aware of how to appeal, and did appeal, grievances. Specifically, Plaintiff appealed five grievances to CORC from October 28, 2019, to December 26, 2019. (*See* Dkt. 135-11 at 350, 369, 386, 397, 416). Further, Plaintiff appealed a grievance on January 21, 2020. (*Id.* at 421). This is significant as Plaintiff's claims range from October 21, 2019, to January 30, 2020, meaning Plaintiff was aware of how to file grievances and successfully appealed grievances to CORC during the dates in question.

Similarly, with respect to Plaintiff's contention that prison administrators thwarted his efforts to file grievances, that argument is also not supported by the record. As discussed above, Plaintiff appealed numerous grievances to CORC. Included among these grievances were allegations like those raised by Plaintiff in connection with the instant complaint, including multiple allegations of assault by corrections officers—which supports the conclusion that the grievance process was not thwarted by prison administrators. *See Kasiem v. Switz*, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010) (noting that "[w]hen . . . the record reflects that [plaintiff] continued to file grievance after

grievance during the [ ] period of alleged unavailability, it is apparent that a reasonable person of ordinary firmness in [plaintiff's] position, as well as [plaintiff] himself, would not have thought that administrative remedies were unavailable. . . ." (quotations and citation omitted)).

Plaintiff points to certain evidence he has submitted, namely that he wrote letters concerning the grievance procedures and filed an Article 78 proceeding, which he contends supports his claim that the grievance procedures were unavailable to him. The Court is not persuaded by this evidence. To the extent Plaintiff claims he wrote letters to Defendant Piccolo, Director Mallozzi, and the Former Acting Commissioner regarding the failure of staff to file grievances, and that these letters should satisfy the exhaustion requirement, the law is well-settled that "complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements." *Muhammad v. Pico*, No. 02 CIV.1052 AJP, 2003 WL 21792158, at *8 (S.D.N.Y. Aug. 5, 2003). Further, both the letters Plaintiff wrote, and the Article 78 proceeding, concern grievances written on February 6, 2020, and February 24, 2020. (Dkt. 139-3 at 2-3). Plaintiff commenced this action on February 13, 2020. (Dkt. 1). Accordingly, even if the Court concluded that these letters constituted grievances, Plaintiff would not have had time prior to filing this action to exhaust his administrative remedies. *Torres v. Anderson*, 674 F. Supp. 2d 394, 397 (E.D.N.Y. 2009) ("[F]ailure to exhaust prior to the commencement of a lawsuit requires dismissal of the prisoner's claim.").

For those reasons, the Court concludes that the grievance process was available to Plaintiff. Plaintiff filed numerous grievances and successfully appealed them to CORC

during the time period relevant to the complaint. Further, there is no evidence that prison administrators attempted to thwart Plaintiff's efforts, nor are Plaintiff's arguments that he filed letters and commenced an Article 78 proceeding persuasive. The Court now turns to whether Plaintiff successfully exhausted his administrative remedies. As discussed below, the undisputed facts establish that he did not with respect to all claims except the retaliation and threats and harassment claims against Defendant Taylor, and the excessive force claim against Defendant Clark.

### 2.    Retaliation Claims Against Defendants Clark, Furney, Farmer, and Adriance

Plaintiff claims that Defendants Clark, Furney, Farmer, and Adriance retaliated against him. (Dkt. 20 at 5). Defendants argue that "Plaintiff failed to file a grievance against Clark, Furney, Adriance, and Farmer regarding retaliation." (Dkt. 135-12 at 10). Plaintiff responds by citing to alleged grievances filed on February 6, 2020, or later, as well as a grievance designated as "SPT-068264-19." (Dkt. 139-3 at 2-3; *see also* Dkt. 141).

The evidence before the Court demonstrates that Plaintiff failed to submit a grievance regarding retaliation by Defendants Clark, Furney, Farmer, and Adriance. In Plaintiff's response, he claims that he exhausted grievance "SPT-068264-19." (Dkt. 139-3 at 3). But there is no evidence in the record that Plaintiff appealed this grievance to CORC successfully or that this grievance was properly filed. Grievance SPT-068264-19 is attached as an exhibit to Defendants' motion for summary judgment. (Dkt. 135-11 at 437-38). This grievance addresses complaints related to non-defendant officers. (*Id.*). This grievance was not appealed to CORC. (*See id.* at 426-438). Further, upon review of

the grievance log, there is no grievance titled SPT-068264-19.  (*See* Dkt. 135-9 at 7-10).

Given that this log contains grievances appealed to CORC dated November 4, 2013, to

May 23, 2022, this supports the conclusion that Plaintiff did not properly file this grievance.

(*See id.*).  Thus, Plaintiff cannot rely on the alleged grievance designated as SPT-068264-

19 to show exhaustion of these claims.

In terms of Plaintiff's alleged grievance dated February 6, 2020, there is a letter to

the IGRC Office which was filed by Defendants in a Rule 26 disclosure.  (Dkt. 45 at 114-

15).  This letter is not stamped with a grievance number and bears no indication that it was

properly filed by Plaintiff.  (*Id.*).  The names in the letter are also redacted, so the Court is

unclear as to whether Plaintiff's letter to the IGRC Office is about Defendants Clark,

Furney, Farmer, and Adriance.  The content of the letter does appear related to the alleged

events of January 18, 2020.

But even if the Court determined that Plaintiff's letter to the IGRC Office dated

February 6, 2020, constituted a successfully filed grievance, Plaintiff filed the instant action

on February 13, 2020 (Dkt. 1), and therefore Plaintiff would not have had time to appeal

his grievance within the seven days prior to filing this lawsuit.  *See, e.g.*, *Johnson v.

Fraizer*, No. 16-CV-6096 CJS, 2016 WL 7012961, at *4 (W.D.N.Y. Dec. 1, 2016)

("[S]ince Plaintiff filed this action a mere three weeks after the events at issue, it is probable

that he simply skipped the grievance/appeal stage and came directly to Federal Court.");

*Lopez v. Cipolini*, 136 F. Supp. 3d 570, 584 (S.D.N.Y. 2015) (finding that the plaintiff

failed to exhaust her administrative remedies because "at the time Plaintiff filed her

Complaint—ten days after the alleged events occurred and she filed her grievance—she had not yet filed an appeal to the CORC").

Plaintiff argues that he only needed to exhaust his administrative remedies prior to November 29, 2021, when he filed his second amended complaint.  (Dkt. 139-3 at 3).  But a plaintiff must exhaust administrative remedies prior to commencing litigation.  *Murray v. Palmer*, No. 903-CV-1010 GTS/GHL, 2010 WL 1235591, at *3 (N.D.N.Y. Mar. 31, 2010) ("Generally, if a prisoner has failed to follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies." (citing *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006)).   "Subsequent exhaustion after suit is filed . . . is insufficient." *Gizewski v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 692 F. App'x 668, 670 n.3 (2d Cir. 2017) (quoting *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *abrogated on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002)); *see Burgess v. Morse*, 259 F. Supp. 2d 240, 247 (W.D.N.Y. 2003) ("The law is clear that an inmate must exhaust his administrative remedies *prior* to bringing a § 1983 claim in federal court.").  "[T]he filing of an amended complaint after an unexhausted claim is brought in federal court does not cure the infirmity."  *Malouf v. Turner*, 814 F. Supp. 2d 454, 463 (D.N.J. 2011) (citing *Ahmed v. Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002)).

Plaintiff also argues that "Seguin omitted this grievance from the printout of grievances and appeals [] as a means of manipulation to argue Plaintiff failed to exhaust administrative remedies."  (Dkt. 139-3 at 3).  Plaintiff has provided no evidence of manipulation or obstruction.  Plaintiff merely offers his own conclusory statements, which

are undermined by other evidence in the record. Rachel Seguin, Director of the Incarcerated Grievance Program for DOCCS, in her declaration, stated under penalty of perjury that she included "[a] copy of the printout of grievances and appeals filed by [Plaintiff] as of July 25, 2022." (Dkt. 135-9 at ¶ 10). Further, Plaintiff himself states that "the CORC issued decision in early 2021," well after Plaintiff initiated this lawsuit. (Dkt. 139-3 at 3). Even if Plaintiff successfully appealed this grievance to CORC, his appeal was well after the time he commenced this lawsuit.

Therefore, there is no legitimate dispute that Plaintiff failed to exhaust his administrative remedies as to his retaliation claims against Defendants Clark, Furney, Farmer, and Adriance.

### 3. <u>Threats and Harassment Claims Against Defendants Clark, Farmer, and Dolaway</u>

Plaintiff argues that Defendants Clark, Farmer, and Dolaway "threat[ened] and harass[ed]" him. (Dkt. 20 at 5). Defendants claim that Plaintiff "failed to exhaust administrative remedies regarding alleged threats and harassment claims against Clark, Farmer and Dolaway." (Dkt. 135-12 at 8). In response to Defendants' argument, Plaintiff contends the grievance supervisors failed to file his grievance. (Dkt. 139-3 at 2).

Plaintiff appears to again rely on the February 6, 2020 letter to support his claimed exhaustion of the threats and harassment claims against Defendants Clark, Farmer, and Dolaway. (*See* Dkt. 45 at 114-115). But for the same reasons provided above—namely, that the record before the Court demonstrates that Plaintiff did not file a grievance as to this claim; even if he did, he did not timely appeal it before filing his case in federal court;

and he otherwise failed to demonstrate any evidence of manipulation of the grievance by prison administrators—the Court determines that Plaintiff failed to exhaust his administrative remedies with regard to the threats and harassment claims against Defendants Clark, Farmer, and Dolaway.

### 4. Excessive Force Claims Against Defendants Clark, Furney, and Adriance

Plaintiff contends that Defendants Clark, Furney, and Adriance used excessive force against him. (Dkt. 20 at 5). Defendants argue that "Plaintiff failed to file grievances on any of the incidents" related to excessive force by Defendants Clark, Furney, and Adriance. (Dkt. 135-12 at 4). Plaintiff contends the grievance supervisors failed to file his grievance and, as to Defendant Clark, Plaintiff filed a grievance that was appealed to CORC alleging that a heavy-set officer assaulted him. (Dkt. 139-3 at 1-2).

Plaintiff again relies on the February 6, 2020, letter in support of his claimed exhaustion of the excessive force claims against Defendants Furney and Adriance. For the same reasons discussed above, the Court finds that Plaintiff failed to exhaust his administrative remedies as to the excessive force claims against Defendants Furney and Adriance.

As to Defendant Clark, Plaintiff filed a grievance on December 16, 2019, that he "was recently assaulted on December 5, 2019 by the heavy-set yard officer who took me out of the cell for a cell search." (Dkt. 135-11 at 437). Plaintiff alleges that the heavy-set yard officer is Defendant Clark. (Dkt. 141 at 2). Here, Plaintiff has provided enough information to alert prison officials to his claims. For example, Plaintiff specifies both the

size of the officer and that the officer was the one to remove him from his cell for a cell search. *See Matthews v. N.Y. State Dep't of Corr.*, No. 9:17-CV-503 (TJM/ML), 2022 WL 823851, at *6 (N.D.N.Y. Mar. 18, 2022) (finding the plaintiff exhausted his administrative remedies when he "provide[d] the specific date, location, and nature of the conduct complained of"); *cf. Wright v. Potter*, No. 9:14-CV-01041 (DNH/TWD), 2016 WL 5219997, at *5 (N.D.N.Y. June 28, 2016), *report and recommendation adopted*, No. 9:14-CV-1041 (DNH/TWD), 2016 WL 5173283 (N.D.N.Y. Sept. 21, 2016) (noting that "failure to specifically describe *any* problem in his grievance concerning medical treatment after the incident did not give the facility enough information to investigate allegations against Defendant").  Thus, summary judgment is not warranted in favor of Defendant Clark on the excessive force claim based on failure to exhaust administrative remedies.

     5.  **Failure to Protect Claim and Deliberate Indifference Claim against Defendant Piccolo**

Plaintiff argues that Defendant Piccolo failed to protect him through a "lack of medical care relating to the physical examination to determine the cause of his symptoms." (Dkt. 20 at 5).  Defendants argue that "there were no grievances filed particularly against Piccolo or in general regarding [Piccolo's actions]."  (Dkt. 135-12 at 8).

The Court has reviewed the record before it, including the aforementioned list of grievances, and finds that Defendants have demonstrated as a matter of law that Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendant Piccolo.  None of Plaintiff's grievances appealed to CORC name Defendant Piccolo.  (*See* Dkt. 135-9 at 6-85; Dkt. 135-11 at 345-438).  Further, none of Plaintiff's grievances

insinuate failure to protect or deliberate indifference by Defendant Piccolo. In other words, Plaintiff's grievances do not put Defendants on notice that Plaintiff is asserting claims against Defendant Piccolo. *See Cisco v. Jones*, No. 9:17-CV-0347 (LEK/DJS), 2020 WL 1180779, at *4 (N.D.N.Y. Mar. 12, 2020) (noting that "to properly exhaust administrative remedies, a grievance must generally put a defendant on notice of the basis for the plaintiff's claims"). Defendants' request for summary judgment as to the claims against Defendant Piccolo is granted on the basis that Plaintiff failed to exhaust his administrative remedies.

### 6. Retaliation Claim Against Defendant Taylor

Plaintiff alleges that Defendant Taylor retaliated against him. (Dkt. 20 at 5). Defendants argue the retaliation claim against Defendant Taylor should be dismissed for failure to exhaust administrative remedies. (Dkt. 135-12 at 6-7). The Court denies Defendants' request for summary judgment on this basis.

Plaintiff filed a grievance complaining that Defendant Taylor was "retaliat[ing]" against him for reporting previous assaults. (Dkt. 135-11 at 389-90). Specifically, in grievances dated November 29, 2019, and December 8, 2019, Plaintiff alleges that Defendant Taylor refused to place his mail in a mailbox, refused to return the mail to him, then stated he would make Plaintiff "scream like a b**ch." (*Id.*). Plaintiff then argues that Defendant Taylor appeared at his cell and mentioned the grievance, stating he was "going to continue this game." (*Id.* at 390). Even though Defendants contend that the dates of Plaintiff's complaint and grievance do not align by one day (Dkt. 135-12 at 6-7),

Defendants have failed to demonstrate that this information was inadequate to allow prison officials to understand the issue and take appropriate remedial measures.

### 7.  Threats and Harassment Claim Against Defendant Taylor

Plaintiff claims that Defendant Taylor engaged in threatening and harassing behavior.  (Dkt. 20 at ¶ 10).  Defendants argue that Plaintiff failed to exhaust his administrative remedies because "Plaintiff failed to file a grievance [stating that] this specific allegation occurred on December 8, 2019."  (Dkt. 135-12 at 7).  The Court disagrees.

In a grievance appealed to CORC, Plaintiff noted that Taylor came to his cell and threatened and harassed him by stating he would make Plaintiff "scream like a b**ch" and was "going to continue this game."  (Dkt. 135-11 at 389-90).  In other words, Plaintiff's grievance specifies the identity of Defendant Taylor, as well as the specific conduct at issue and what he specifically said to Plaintiff.  Given this information, the Court finds that the lack of an exact date as to when this conduct allegedly occurred does not render the grievance unexhausted.  Defendants have failed to show how the lack of any specific date in the grievance failed to put them on notice.

For all these reasons, Defendants' request for summary judgment based on failure to exhaust is granted as to: (1) the retaliation claims against Defendants Clark, Furney, Farmer, and Adriance; (2) the threats and harassment claims against Defendants Clark, Farmer, and Dolaway; (3) the excessive force claims against Defendants Furney and Adriance; and (4) the failure to protect and deliberate indifference claims against Defendant Piccolo.  However, Defendants' request for summary judgment based on failure

to exhaust is denied as to: (1) the excessive force claim against Defendant Clark; (2) the retaliation claim against Defendant Taylor; and (3) the threats and harassment claim against Defendant Taylor.

### D. **The Merits**

#### 1. **The Excessive Force Claim Against Defendant Clark**

The Court now turns to Defendants' arguments regarding the merits of Plaintiff's remaining claims. Defendants state that summary judgment should be granted as to the excessive force claim against Defendant Clark.

In order for an Eighth Amendment excessive force claim to survive a motion for summary judgment, the evidence, viewed in the light most favorable to the non-moving party, must go "beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives," and instead "support a reliable inference of wantonness in the infliction of pain. . . ." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). "'[S]ome degree of injury is ordinarily required to state a claim' of excessive use of force in violation of the Eighth Amendment." *Taylor v. N.Y. Dep't of Corr.*, No. 10 CIV. 3819 (JPO), 2012 WL 2469856, at *4 (S.D.N.Y. June 27, 2012) (quoting *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999)). Accordingly, "a *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). Indeed, "[t]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

However, "an inmate 'need not prove "significant injury" to make out an excessive force claim.'" *Banks v. Cnty. of Westchester*, 168 F. Supp. 3d 682, 688 (S.D.N.Y. 2016) (quoting *Griffin v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999)). "[T]he core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Factors to consider in determining whether prison officials unnecessarily and wantonly inflicted pain include: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Romano*, 998 F.2d at 105 (citing *Hudson*, 503 U.S. at 7).

Defendants argue that Plaintiff's excessive force claim against Defendant Clark "should be dismissed for lack of personal involvement." (Dkt. 135-12 at 12). Specifically, Defendants point to Plaintiff's grievance, which does not identify the name of the officer. (*Id.*). Defendants also state that Plaintiff "testified that as a result of alleged assault on December 5, 2019, he did not sustain any injuries." (*Id.*).

In his complaint, Plaintiff alleges that "[o]n December 5, 2019, plaintiff was assaulted by defendant Clark, who was the yard escort officer along with defendant Furney, when plaintiff was taken out the cell for a cell search." (Dkt. 20 at ¶ 9). Plaintiff states in his grievance that he was assaulted by "the heavy-set yard officer who took me out of the cell for a cell search." (Dkt. 135-11 at 437). In his response to Defendants' motion for summary judgment, Plaintiff again asserts that "Clark assaulted plaintiff by pushing and pulling [him] backward out of the cell when tak[ing him] out for a cell search." (Dkt. 139-

3 at 1).  Additionally, Plaintiff states that the "'heavy set' officer who took me out the cell for a search" is Defendant Clark.  (*Id.*).  At his deposition, Plaintiff stated that Defendant Clark partially entered his cell and pushed him and "yanked" him.  (Dkt. 135-11 at 84-86).  Plaintiff alleges that "Clark pat frisk me once I step out of the cell."  (*Id.* at 87).  Plaintiff testified that he did not suffer injuries because of this incident.  (*Id.* at 88).

Defendant Clark denies being involved in any cell search of Plaintiff on the date in question.  (Dkt. 135-4 at ¶¶ 3-4).  While it seems unlikely that a jury would conclude that Defendant Clark was personally involved—based on the evidence that he was not even working in the area on the date in question—on this record, the Court concludes that Plaintiff's claims to the contrary present an issue of fact.

Nonetheless, Plaintiff's excessive force claim fails because the undisputed facts establish that any use of force was *de minimis*.  Specifically, Plaintiff alleges that he was pushed, yanked, and pulled backwards out of the cell when removed for a cell search.  But Plaintiff testified that he did not suffer injuries and nothing in Plaintiff's recitations of the events indicates that Defendant Clark's use of force was excessive.  *See Kornegay v. New York*, 677 F. Supp. 2d 653, 660 (W.D.N.Y. 2010) (finding that "the force used against plaintiff was no more than *de minimis*" when the plaintiff fell to the ground after the defendant shoved him); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 471 (S.D.N.Y. 1998) (finding that during a pat frisk, "although kicking an inmate's ankles and feet cannot be condoned, this use of force is *de minimis* and insufficient to rise to the level of a constitutional violation"); *Candelaria v. Coughlin*, 787 F. Supp. 368, 374 (S.D.N.Y. 1992), *aff'd*, 979 F.2d 845 (2d Cir. 1992) (holding that there was no excessive force where the

plaintiff did not allege repeated grabbing of the throat or any resulting physical injury). Because no reasonable jury could conclude that Plaintiff's Eighth Amendment rights were violated by Defendant Clark, he is entitled to summary judgment on this claim.

### 2.   **The Retaliation Claim Against Taylor**

Defendants argue that they are entitled to summary judgment on Plaintiff's retaliation claim against Defendant Taylor.  (Dkt. 135-12 at 14-16).

It is well settled that prison officials may not retaliate against prisoners for exercising their constitutional rights.  *See generally Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977).  To make out a § 1983 retaliation claim, "a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  *Espinal*, 558 F.3d at 128 (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

"[T]he filing of prison grievances is a constitutionally protected activity[.]"  *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003).  But "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."  *Id.* at 353 (citation omitted).  "Insulting or disrespectful comments directed at an inmate generally do not rise to this level."  *Id.*

Defendants contend that "the alleged acts of retaliation were no more than de minimis and would not have deterred an inmate of ordinary firmness."  (Dkt. 135-12 at 16).  Defendants point to Plaintiff's complaint, which alleges that "Taylor appeared at

Plaintiff's cell and spoke about Plaintiff's grievance dated November 29, 2019, and said

that 'I am going to continue this game' and left." (*Id.* at 15-16). Defendants also point to

the fact that Plaintiff testified that Defendant Taylor did not use force against Plaintiff. (*Id.*

at 16).

In his complaint, Plaintiff alleges that Defendant Taylor, in retaliation for Plaintiff's

filing of a grievance on November 28, 2019, against Defendant Taylor for telling Plaintiff

"I will have you scream like a bitch," retaliated against Plaintiff by stating that he would

"continue this game." (Dkt. 20 at ¶¶ 8, 10). In his testimony, Plaintiff states that he

suffered "no physical injuries" because of Defendant Taylor. (Dkt. 135-11 at 90). Further,

Plaintiff testified that Defendant Taylor would come to "harass me and make comments

about me and things like that." (*Id.* at 78-79). But Plaintiff, in his complaint, testimony,

response, and sur-reply, does not allege that his speech was chilled. In fact, the evidence

suggests that Plaintiff continued to file grievances, including the filing of a grievance

against Defendant Taylor for his statement that he would "continue this game." *See*

*Pledger v. Hudson*, No. 99 CIV.2167LTSTHK, 2005 WL 736228, at *4 (S.D.N.Y. Mar.

31, 2005) ("Second Circuit decisions can be read to indicate that a showing of actual

chilling of First Amendment-protected conduct is both necessary and, combined with a

showing of motivation of a governmental official to punish exercise of the protected

interest, sufficient, to make out a retaliation claim."). Plaintiff has pointed to no evidence

that disputes Defendants' assertions that the alleged retaliation did not rise to the level of a

constitutional violation. Plaintiff merely points to insulting or disrespectful comments by

Defendant Taylor, but on the record before the Court, no rational jury could find in

Plaintiff's favor on his retaliation claim against Defendant Taylor. Thus, Defendants are entitled to summary judgment on this claim.

### 3. The Threats and Harassment Claim Against Defendant Taylor

Defendants argue that they are entitled to summary judgment on Plaintiff's threats and harassment claim against Defendant Taylor because "Plaintiff fails to state a claim upon which relief may be granted." (Dkt. 135-12 at 13).

A claim of threats and harassment alone, without allegations of accompanying injury or use of force, is insufficient to state an Eighth Amendment claim. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1996) (per curiam) ("The claim that a prison guard called [plaintiff] names . . . did not allege any appreciable injury and was properly dismissed."); *Aziz Zarif Shabazz*, 994 F. Supp. at 474 ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and therefore is not actionable under . . . § 1983." (internal quotations and citation omitted)).

Defendants argue that Plaintiff does not allege any injury or use of force. (Dkt. 135-12 at 13). Defendants point to Plaintiff's "claims that on November 28, 2019, Defendant Taylor threatened Plaintiff." (*Id.*).

In his complaint, Plaintiff states only that Defendant Taylor threatened him twice, stating that "I will have you scream like a bitch" and that he would "continue this game." (Dkt. 20 at ¶¶ 8, 10). Plaintiff never alleges in his grievances that Defendant Taylor used force or caused injury, nor does he file a grievance suggesting that Defendant Taylor used

force or caused injury. (*See* Dkt. 135-11 at 389-90). Further, Plaintiff testified that he had "no physical injuries" from his interactions with Defendant Taylor, just the "mental effect of him putting me in danger." (*Id.* at 90); *see Aniades v. N.Y. State Div. of Parole*, No. 21 CIV. 5975 (CM), 2023 WL 4421877, at *8 (S.D.N.Y. July 10, 2023) ("Plaintiff's fear that he might be assaulted, without more, is 'not an objectively serious enough injury to support a claim for damages [under the Eighth Amendment].'" (quoting *Bolton v. Goord*, 992 F. Supp. 604, 627 (S.D.N.Y. 1998))). Plaintiff does not claim Defendant Taylor caused him injury in either his response to Defendants' motion for summary judgment or sur-reply. In fact, Plaintiff does not respond to Defendants' argument that Plaintiff does not allege any injury or use of force. (*See* Dkt. 139; Dkt. 141). For these reasons, the motion for summary judgment as to the threats and harassment claim against Defendant Taylor is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 135) is granted, and their motion to strike (Dkt. 142) is denied. Any of the claims dismissed for failure to exhaust are dismissed without prejudice. The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      March 24, 2025
            Rochester, New York